UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLYNESIA LINE, LTD.,<br><br>    Plaintiff,<br><br>    v.<br><br>FAX CARGO INC., et al.,<br><br>    Defendants. | Case No. 4:16-cv-04305-KAW<br><br>**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 17 |

On December 23, 2016, Plaintiff Polynesia Line, Ltd. filed a motion for default judgment against Defendants Fax Cargo Inc. ("Fax"), Xavier A. Faletoi, and Easter Galo for breach of a maritime contract pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1). Defendants have not appeared in this action, nor did they respond to Plaintiff's complaint or motion for default judgment.

On February 16, 2017, the Court held a hearing on Plaintiff's motion for default judgment, at which Defendants did not appear. Since Defendants, by the very virtue of being in default, have not consented to the undersigned, the Court reassigns this action to a district judge and recommends that Plaintiff's motion be GRANTED.

## I.  BACKGROUND

The complaint alleges that Defendants committed breach of a maritime contract, fraud/intentional misrepresentation, and negligent misrepresentation. (Compl., Dkt No. 1 ¶¶ 15-28). The essential facts that gave rise to this action include the following: Polynesia Line and Fax were parties to a Master Carrier Service Agreement ("MCSA") which also incorporated by reference the terms and conditions of Plaintiff's tariff and Subject Bill of Lading ("B/L"). (Compl. at ¶ 8). Fax was a Shipper and/or Merchant (as those terms are used in the Plaintiff's

Subject B/L, tariff and MCSA) with respect to various shipments for which proper bills of lading and freight bills were issued by or on behalf of Plaintiff. (Compl. ¶ 9). The said shipments were tendered for transportation between United States and territorial ports on board ocean vessels for which freight charges were lawfully incurred in favor of Plaintiff pursuant to the aforesaid tariff and contracts of carriage. *Id.* Individual Defendants Faletoi and Galo directed and/or participated in the misrepresentations at issue herein. (Compl. ¶ 10).

Under the applicable contracts of carriage, Defendants are obligated to pay the entire amounts of freight due under the applicable tariff and/or service contract for each shipment, as well as additional damages if the cargo is misdescribed or misdeclared to Plaintiff. (Compl. ¶ 11). Defendants repeatedly obtained transportation of property at less than the rates or charges established by Plaintiff in its published tariff and in the MCSA by misdescribing or misdeclaring commodities on at least 33 shipments. (Compl. ¶¶ 11-12). As a result, Plaintiff charged and collected less than was actually due under the relevant MCSA and tariff. (Compl. ¶ 12).

On July 29, 2016, Plaintiff filed an action against Defendants. Fax and Faletoi were personally served on September 22, 2016. (Dkt. Nos. 10-11.) Galo was personally served on September 7, 2016. (Dkt. No. 9.) None of the defendants appeared.

On March 2, 2016, the Clerk entered default. (Dkt. No. 15.) On December 23, 2016, Plaintiff filed a motion for default judgment. (Pl.'s Mot., Dkt. No. 17) Defendants did not file an opposition. On February 16, 2017, the Court held a hearing, at which Defendants did not appear.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. See *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to

2

determine whether it should grant a default judgment:
> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).  In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### III.   DISCUSSION

#### A.   Jurisdiction and service of process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

##### i.   Subject Matter Jurisdiction

This is a suit for unpaid freight charges pursuant to an ocean bill of lading, tariff, and/or service contract and comprises an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1).  It also presents a federal question under 28 U.S.C. § 1331, because it arises under the Shipping Act, as amended, 46 U.S.C. § 40101 et seq.  Finally, Plaintiff's supplemental tort claims are proper under 28 U.S.C. § 1367.

##### ii.   Personal Jurisdiction

Federal courts have a three prong test to determine whether specific, personal jurisdiction may be exercised over a nonresident defendant: (1) the defendant purposefully directed its activities toward residents of the state or purposefully avails himself of the privileges of conducting activities in the forum; (2) the cause of action arises out of the defendant's contacts with the state; and (3) the exercise of jurisdiction is reasonable. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

3

### a. Purposeful Availment

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Such actions are considered to be a purposeful availment of the privilege of conducting activities within the State, therefore invoking the benefits and protections of its laws. *Id*. As a "quid pro quo" for these "benefits and protections," a defendant must "submit to the burdens of litigation in that forum." *Id*. Factors evaluated include: prior negotiations and contemplated future consequences, the terms of the contract, and the parties' actual course of dealing. *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001).

Defendants are located in American Samoa. The Master Carrier Service Agreement subject to this action, effective October 30, 2013, however, contemplated shipments through California Ports, notably Los Angeles, Long Beach, and Oakland. In furtherance of this agreement, Defendants booked shipments utilizing California ports in 2015 and 2016, over the course of the effective contract period. Therefore, in the course of dealings by the parties in shipping units through California, coupled with the contract terms, confirms that Defendant availed itself of the privilege of doing business in California.

### b. The Cause of Action Arises Out of Defendant's Contacts with the Forum State

This element is established if Plaintiff would not have been injured "but for" the nonresident defendant's forum-related activities. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, the misdeclarations and/or misdescriptions giving rise to Defendants' tortious conduct, and breach of contract occurred on shipments booked by Defendants, moving through ports in the State of California. Therefore, "but for" Defendants' conduct, Plaintiff would not have suffered harm in the form of underpaid freight, and liquidated damages. Thus, Plaintiff satisfies the second prong of specific jurisdiction.

///

///

  c. <u>Reasonableness</u>

The Ninth Circuit looks to seven factors to determine reasonableness: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). A balancing test is employed, and no one factor is dispositive. *Id.* at 1323.

  1. Purposeful Interjection

Distinct from purposeful availment, the Court must consider the degree to which Defendant interjected itself to the privileges and forum of California. *See id.* Defendants operated an extensive amount of shipments through California ports, and profited from this lucrative business.

  2. Burden on Defendant

"The unique burdens placed upon one who must defend in a foreign system should have significant weight in assessing the reasonableness of stretching the long arms of personal jurisdiction over national borders." *Asahi Metal Ind. v. Superior Court,* 480 U.S. 102, 114 (1987). However, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988). American Samoa is a territory of the United States, and, is, therefore not a foreign nation. Furthermore, the Defendants conducted extensive business in California, and are well adept at operating in the United States and California legal systems. Nevertheless, Defendants have chosen not to defend or engage in this action.

  3. Extent of Conflict with the Sovereignty of the Defendant's State

Conflict with the sovereignty of a defendant's state requires "an examination of the competing sovereign interests in regulating [the defendant's] behavior." *Dole Food Co.*, 303 F.3d at 1115. Since sovereignty concerns inevitably arise whenever a United States court exercises

jurisdiction over a foreign national, this factor is "by no means controlling." *Ballard*, 65 F.3d at 1501. Otherwise, "it would always prevent suit against a foreign national in a United States court." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984). Sovereignty concerns weigh more heavily when the defendants have no United States-based relationships." *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) (citing *Sinatra*, 854 F.2d at 1191).

No conflict is apparent here, as Defendants are domiciled in American Samoa, which is a territory of the United States, and, thus, an extension of the federal judicial institution. American Samoa has asserted no sovereignty or interest over this litigation. At the very least, this factor is neutral.

### 4. California's Interest in Adjudicating the Dispute

"California maintains a strong interest in providing an effective means of redress for its residents [who are] tortiously injured." *Sinatra*, 854 F.2d at 1200. Plaintiff conducts a significant amount of business through California ports, such that California courts possess a significant interest in adjudicating disputes involving resident corporate entities.

### 5. The Most Efficient Judicial Resolution of the Controversy

Efficiency in the jurisdictional context is focused on the location of the evidence and witnesses. *Caruth v. International Psychoanalytical Ass'n,* 59 F.3d 126, 129 (9th Cir. 1995). This criterion inherently weighs in Defendants' favor, since Defendants' business records are located in American Samoa. This factor, however, is "no longer weighed heavily given the modern advances in communication and transportation." *Panavision,* 141 F.3d at 1323.

### 6. Importance of the Forum to the Plaintiff's Interest in Convenient and Effective Relief

Courts have previously noted that this factor is not of paramount importance. *See, e.g., Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1116 (9th Cir. 2002). Notwithstanding, Plaintiff would benefit from litigating from California, as it regularly conducts operations through California ports. Thus, while given little weight, this factor weighs in favor of reasonableness.

///

///

       7.   Existence of an Alternative Forum

The only alternative forum in this case would be American Samoa, which, given the lack predictability—and absence of a federal district court—does not present Plaintiff an equal opportunity to litigate its claim.

In light of the foregoing factors, the exercise of jurisdiction over Defendants is reasonable, and the district court may exercise personal jurisdiction over Defendants.

### iii. Venue

Venue is proper, because the Court has jurisdiction over the parties, and the applicable contract provisions specify that the parties submit to the venue in this district, which includes the Port of Oakland, where Plaintiff transports cargo by ocean vessel. (Compl. ¶ 2.)

### iv. Service of process

Plaintiff personally served the summons, complaint, and other required documents upon Defendant Galo on September 7, 2016. (Dkt. No. 9.) Plaintiff personally served the summons, complaint, and other required documents upon Defendants Fax and Faletoi on September 22, 2016. (Dkt. No. 10 & 11.) Plaintiff subsequently served its motion for default judgment upon Defendants, and filed a certificate of service on December 29, 2016. (Dkt. No. 19.) Thus, Defendants were properly served with the complaint.

## B. Application to the case at bar

Since the Court has jurisdiction in this matter, this Court must turn to the *Eitel* factors to determine whether the entering of a default judgment is appropriate in this matter.

### i. Plaintiffs will suffer prejudice if default judgment is not granted

Plaintiffs would be prejudiced if the Court did not enter default judgment, because it possesses no alternative recourse for recovery. *Eitel*, 782 F.2d at 1471.

### ii. Merits of Plaintiffs' claims and the sufficiency of the complaint

The second and third *Eitel* factors focus on the merits of Plaintiffs' substantive claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471–72. A party seeking default judgment must state a valid claim upon which it may recover. *Walters v. Statewide Concrete Barrier, Inc.*, 2005 U.S. Dist. LEXIS 49433, at *8 (N.D. Cal. Sept. 2, 2005).

1    Plaintiff alleges that Defendants breached a maritime contract. Pursuant to the Subject B/L
2    and otherwise, Defendants agreed and became bound to pay Polynesia Line for ocean freight and
3    related charges in amounts provided by the MCSA and/or tariff. (Compl. ¶ 16). Defendants,
4    however, had repeatedly obtained transportation of property at less than the rates or charges
5    established by Polynesia Line in its tariff or service contract and have failed to pay all damages to
6    which it is obligated under the relevant tariff and service contract. (Compl. ¶ 16).

7    The contract terms between Plaintiff and Defendants include language which provides:

> Freight has been calculated on the basis of particulars furnished by or on behalf of the Shipper. If the particulars furnished by or on behalf of the Shipper are incorrect, it is agreed that a sum equal to double the correct Freight less the Freight charged shall be payable as liquidated damages to the Carrier . . . .

11   (Compl. ¶ 13). Further, the definition of "Freight includes all charges payable to the Carrier in
12   accordance with the applicable tariff and this Bill of Lading." *Id.* Defendants misdescribed or
13   misdeclared commodities to Plaintiff on at least 33 shipments. (Compl. ¶ 12). These
14   misdescriptions and misdeclarations violate the terms to which Defendants agreed; such an
15   allegation is sufficiently pleaded to demonstrate Defendants breached a maritime contract.

16   Plaintiff also alleges that Defendants committed fraud and/or intentional misrepresentation.
17   Defendants falsely described the contents of shipments and/or fraudulently concealed the true
18   contents and facts thereof. (Compl. ¶ 20). These false representations were made by various
19   agents, employees, joint venturers, co-loaders, and/or co-conspirators of Defendants. (Compl. ¶
20   21). In reliance, Plaintiff repeatedly charged amounts less than were in fact due for the shipments
21   in question, and suffered harm. (Compl. ¶¶ 21, 23).

22   Furthermore, Plaintiff alleges that Defendants committed negligent misrepresentation.
23   Defendants falsely described the contents of shipments and/or concealed the true contents and
24   facts thereof despite a legal obligation to disclose the same. (Compl. ¶ 25). These false
25   representations were made by various agents, employees, joint venturers, co-loaders and/or co-
26   conspirators of Defendants. (Compl. ¶ 26). In reliance, Plaintiff repeatedly charged amounts less
27   than were in fact due for the shipments in question, and suffered harm. *Id.*
28   ///

Such allegations set forth the elements necessary to satisfy Plaintiff's breach of a maritime contract, fraud/intentional representation, and negligent misrepresentation claims. Accordingly, the Court finds that Plaintiff has sufficiently stated claims for these three causes of action.

### iii. Sum of Money at Stake

The fourth *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered. In making this assessment, the Court must take into account the amount of money at stake in relation to the seriousness of Defendant's conduct. *Eitel*, 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by Defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. Dec. 15, 1997). A default judgment is only disfavored when a large amount of money is involved or is unreasonable in light of Defendant's actions. *Truong Giang Corp. v. Twinstar Tea Corp*., 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). In determining if the amount at stake is reasonable, the Court may consider Plaintiffs' declarations, calculations, and other documentation of damages. *Id*.

Here, Plaintiff requests compensatory damages in the amount of $285,605.00 resulting from Defendants' misdescriptions and misdeclarations. (Pl.'s Mot. at 6-7.) The amount Defendants owe has been established in the "Damages Table," which is attached as Exhibit 6 to Plaintiff's motion for default judgment and explained in the supporting declaration of Torben Henry. (Pl.'s Mot., Ex. 6; Decl. of Torben Henry, "Henry Decl.," Dkt. No. 17-2 ¶ 4.) Therefore, the sum of money at stake is well documented, and due under the service contracts. Thus, the fourth factor weighs in Plaintiff's favor.

### iv. The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of dispute as to any material facts of the case. Defendants have not participated in this action and have not made any attempt to contest any of Plaintiff's material facts or legal assertions or moved to set aside the entry of default despite being served with all papers. Thus, this factor weighs in favor of default judgment.

### v. Whether Default was a Result of Excusable Neglect

The sixth *Eitel* factor contemplates the possibility that Defendant's default was the result

of excusable neglect. Under this analysis, the Court considers whether Defendant was put on adequate notice to apprise it of the pendency of the action brought against it. *Phillip Morris USA, Inc. v. Castworld Prod., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003). In addition, the Court also considers whether the circumstances surrounding Defendant's failure to answer the complaint are sufficient to excuse or justify its default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (Default cannot be attributed to excusable neglect where defendants were properly served with the complaint, the notice of entry of default, and the papers in support thereof.).

Here, Defendants received notice of the Complaint and have been served with this motion. Defendants have neither answered the complaint, nor otherwise appeared. Defendant filed its motion for default judgment more than two months following proper service of the complaint. Consequently, there is nothing to suggest that Defendants' failure to appear and litigate this matter is based on excusable neglect.

**vi.     Federal Rules Preference for a Decision on the Merits**

After an examination of these facts in the aggregate, the undersigned finds that *Eitel* factors one through six outweigh the Federal Rules of Civil Procedure's preference for a decision on the merits. The undersigned, therefore, recommends the entry of default judgment.

**IV.     DAMAGES**

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

In the complaint and in making this motion, Plaintiff seeks $285,605.00 in damages for Defendants' tortious conduct and, in the alternative, breach of a maritime contract. (Pl.'s Mot. at 8-9.) These damages are reflected in a report titled "Damages Table," which is explained in the declaration of Torben Henry. (Pl.'s Mot., Ex. 6; Henry Decl." ¶ 4). The "Correct Charge" column

of the Damages Table spreadsheet is the accurate full amount of all tariff or contract freight and charges due on each commodity that should and would have been charged had the cargo not been misdesribed. (Henry Decl. ¶ 4). The "Difference" column identifies the difference between the correct amount of all tariff or contract freight and charges particular to each Subject B/L and the amount that was originally charged, which is determined by reviewing Plaintiff's contract rates and comparing the freight and charges that were assessed based on the original misdescription to the freight charges that should and would have been charged if truthful particulars had been provided. (Henry Decl. ¶ 4). The "Total" column is the sum of the "Correct Charge" column and the "Difference" column, to obtain Polynesia Line's total liquidated damages of $285,605.00. (Henry Decl. ¶ 4).

As alleged in the complaint, Defendants committed the torts of fraud/intentional misrepresentation and negligent misrepresentation, and also breached a maritime contract. (Compl. ¶¶ 15-28). As set forth above, pursuant to the bill of lading, Defendants' conduct proximately caused Plaintiff damages in the amount of $285,605.00.

## V.   CONCLUSION

For the reasons set forth above, the undersigned RECOMMENDS that Plaintiff Polynesia Line, Ltd.'s motion for default judgment against Defendants Fax Cargo Inc., Xavier A. Faletoi, and Easter Galo be GRANTED, and that Plaintiff be awarded damages in the amount of $285,605.00.

Any party may file objections to this report and recommendation with the district judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

IT IS SO RECOMMENDED.

Dated: February 16, 2017

KANDIS A. WESTMORE
United States Magistrate Judge

11